MICHAEL STRATOS vs. DEPARTMENT OF PUBLIC WELFARE.

Hampshire. May 3, 1982. — August 31, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

Constitutional Law, Equal protection of laws. Civil Rights, Attorney's fees, Availability of remedy.

In an action challenging a decision of the Department of Public Welfare denying the plaintiff aid to purchase a washing machine, on the ground that a regulation issued by the department provided only for replacement assistance to families whose washing machines were beyond repair and not for initial purchase assistance to those who did not own washing machines, the plaintiff's claim that the department's decision and the regulation denied him equal protection of the laws was sufficient to bring the action within 42 U.S.C. § 1983 (1976 & Supp. III 1979) and to justify an award of attorney's fees pursuant to § 1988. [316-319]

In an action by a plaintiff claiming that a decision by the Department of Public Welfare, refusing him aid to purchase a washing machine, denied him equal protection of the laws, the judge did not abuse his discretion in awarding attorney's fees pursuant to 42 U.S.C. § 1988 (Supp. IV 1980). [319-320]

Discussion of guidelines to be applied in calculating an award of attorney's fees under 42 U.S.C. § 1988 (Supp. IV 1980). [320-324]

In awarding attorney's fees pursuant to 42 U.S.C. § 1988 (Supp. IV 1980) a judge may not rely solely on the hourly rates fixed by Rule 53 (3) of the Superior Court, as amended (1978), for compensation of appointed defense counsel in criminal cases. [324-325]

CIVIL ACTION commenced in the Superior Court Department on April 16, 1980.

The case was heard by Adams, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

Jim Hammerschmith for the plaintiff.

Judith S. Yogman, Assistant Attorney General, for the defendant.

HENNESSEY, C.J. Both parties appeal from an award, by a Superior Court judge, of attorney's fees under 42 U.S.C. § 1988 (1976). The Department of Public Welfare (department) contends that no fee was warranted, and the plaintiff seeks a higher fee. We conclude that the judge was correct in his decision to award an attorney's fee. We remand the case for further consideration by the judge of the proper fee for trial and appellate work by the plaintiff's counsel.

We begin by summarizing the case from which the plaintiff's fee claim arose. The plaintiff, Michael Stratos, applied to the department for aid in the purchase of a washing machine. Under the department's emergency assistance program, funds for washing machines and other appliances were available to eligible applicants in circumstances defined in a regulation issued by the department.[1] The department denied Stratos's request on the ground that the regulation provided only for replacement assistance to families whose washing machines were beyond repair, and not for initial purchase assistance to families who did not own washing machines. The department later amended this regulation by deleting the provisions relating to washing machines. See 106 Code Mass. Regs. § 309.050(E)(3), 205 Mass. Reg. 9-10 (April 10, 1980).

Stratos filed a complaint in the Superior Court, based on G. L. c. 30A, § 14,[2] which provides for judicial review of administrative decisions, and 42 U.S.C. § 1983 (1976 & Supp. III 1979), which creates a private cause of action for violations, under color of State law, of rights secured by the

---

[1] The regulation then in force provided in relevant part that "[r]efrigerators, stoves or heaters . . . belonging to the recipient which do not warrant repair in the written opinion of the serviceman may be replaced. . . . Authorization for the replacement of washing machines may be made under the same conditions as for refrigerators, stoves, or heaters . . . ." 106 Code Mass. Regs. § 309.150 (1978).

[2] General Laws c. 30A, § 14, is part of the State Administrative Procedure Act. It authorizes reviewing courts to set aside agency decisions on a number of grounds, including violation of constitutional provisions, error of law, and arbitrary or capricious decisionmaking.

Constitution and laws of the United States.[3]  He alleged that the department's decision and the regulation on which it was based violated (1) the requirement of G. L. c. 18, § 2 (B) (d), that the department must provide public welfare assistance "on a fair, just and equitable basis to all people in need"; (2) a Federal regulation under the Social Security Act, 45 C.F.R. § 233.10(a)(1) (1981), requiring that State assistance programs "must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups"; and (3) the equal protection clause of the Fourteenth Amendment to the United States Constitution.  He requested that the court reverse the department's decision, order the department to provide funds for the purchase of a washing machine, and declare the regulation invalid.  Stratos also requested an attorney's fee under 42 U.S.C. § 1988 (Supp. IV 1980), which provides that in actions based on certain Federal statutes, including § 1983, the court may award a reasonable fee to the prevailing party.[4]

The Superior Court judge entered judgment for Stratos in two stages.  First he issued a partial summary judgment reversing the department's decision, and ordered the department to provide Stratos with a vendor payment in the maximum amount of $236, plus installation charges.  The judge reserved, without prejudice, his decision on Stratos's requests for declaratory judgment and for an attorney's fee.  After receiving affidavits and memoranda on the question of fees, the judge entered a final judgment, in which he

[3] United States Code tit. 42, § 1983, as amended through Pub. L. No. 96-170, § 1, 93 Stat. 1284 (1979), provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4] "In any action . . . to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988 (Supp. IV 1980).  Of the listed sections, only § 1983 is at issue.

declared that the regulation violated G. L. c. 18, § 2 (B) (*d*), and 45 C.F.R. § 233.10(a)(1), and awarded Stratos an attorney's fee of $675. He did not address Stratos's equal protection claim.

Stratos's fee request at the time final judgment was entered amounted to $1,458. This figure was based on an hourly rate of $50, multiplied by a total of twenty-nine hours and ten minutes. Eleven hours and forty-five minutes had been spent on the merits of the case, and seventeen hours, twenty-five minutes on the question of fees. The judge's computation differed in two respects from Stratos's request. He reduced the number of hours to be compensated, finding that Stratos's counsel reasonably spent a total of twenty-five hours preparing and presenting the case. More significantly, he reduced the hourly rate to $35 for the time spent in court and $25 for time spent out of court. The judge stated that he "[could] not find that fifty dollars an hour [was] an unreasonable charge for such services," but concluded that the award should be based on the rates set in Rule 53 (3) of the Superior Court, as amended (1978), for compensation of criminal defense counsel — $35 for in-court time and $25 for out-of-court time.[5]

Stratos appealed the fee award, arguing that an award under § 1988 must be based on a "market-place standard," and that the judge's reliance on rule 53 (3) was error. The department filed a cross appeal, arguing primarily that Stratos was not entitled to attorneys' fees under § 1988 because the underlying action was not an action to enforce the provisions of § 1983. We transferred the case to this court on our own motion.[6]

---

[5] The judge also referred to Rule 49 (3) of the Superior Court, as amended (1980), which sets a rate of $35 an hour for masters.

[6] Stratos filed a motion in the Appeals Court to strike certain arguments from the department's brief, on the ground that they had not been raised before the Superior Court. No final action has been taken on the motion. Because none of the challenged arguments is dispositive in the department's favor, we shall not attempt to determine precisely what was raised below, but instead shall address the various issues presented in the briefs. See *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977).

1. *Applicability of § 1988.*

The department contends that Stratos is not entitled to an attorney's fee under § 1988 because his challenge to the department's regulation does not qualify as an action under § 1983. The full reach of § 1983 as a remedy for violation of Federal law is not yet clear. The Supreme Court has held that § 1983 encompasses violations of statutory as well as constitutional provisions, and has rejected the view that statutory § 1983 actions must be based on "civil rights" legislation. *Maine* v. *Thiboutot,* 448 U.S. 1, 4-8 (1980). On the other hand, the Court has recognized that Congress may foreclose actions under § 1983 to enforce particular statutes by providing exclusive, internal remedies for their violation. *Middlesex County Sewerage Auth.* v. *National Sea Clammers Ass'n,* 453 U.S. 1, 19-21 (1981). See generally *Pennhurst State School & Hosp.* v. *Halderman,* 451 U.S. 1, 28 (1981); Comment, Statutory Non-Civil Rights Violations of Section 1983 and Awards of Attorneys' Fees after *Maine* v. *Thiboutot,* 61 B.U.L. Rev. 1069, 1075-1079 (1981).

The department contends first that Stratos's claim under § 1983 was superfluous, and should be disregarded. The department characterizes Stratos's action as a "routine petition for judicial review" of administrative proceedings, and points out that this remedy was available under State law, through G. L. c. 30A, § 14. It also argues that the declaratory judgment invalidating the regulation was an unnecessary afterthought, appended to the case as a "hook" on which to hang an award of attorneys' fees.

These arguments misconceive the function of § 1983 and § 1988. Section 1983 provides an independent remedy for violation of rights protected by Federal law. If such a right is at issue, the § 1983 remedy is available, even if the State has also provided a means of obtaining relief. See *Patsy* v. *Board of Regents,* 457 U.S. 496, 500-515 (1982) (no requirement of exhaustion of State administrative remedies); *McNeese* v. *Board of Educ. for Community Unit School Dist. No. 187,* 373 U.S. 668, 671-673 (1963). See generally *Monroe* v. *Pape,* 365 U.S. 167, 183 (1961), overruled in part

on other grounds, *Monell* v. *New York City Dep't of Social Servs.*, 436 U.S. 658, 663 (1978). Section 1988 creates an incentive to vindicate federally protected rights. *Maher* v. *Gagne*, 448 U.S. 122, 133 (1980). The fee incentive is equally useful and necessary whether the right in question is secured by Federal law alone, or by State law as well. Therefore, the fact that a plaintiff claiming relief under § 1983 could have obtained relief solely by means of a State remedy — even a "routine" one — does not foreclose a fee award. *Id.* at 132 n.15. *Draper* v. *Town Clerk of Greenfield*, 384 Mass. 444, 454 (1981).

The department also argues that Stratos did not make out a violation of a right secured by the "Constitution and laws" of the United States, and therefore had no cause of action under § 1983. More specifically, the department contends that the § 1983 remedy does not extend to violations of Federal regulations, and that Stratos's constitutional claim was without merit. We need not determine whether regulations under the Social Security Act are Federal "laws" within the meaning of § 1983, because we believe that Stratos alleged a substantial constitutional claim, sufficient to support a § 1983 action.

Complaints brought under § 1983 may often allege both a violation of Federal constitutional provisions, which provide a basis for action under § 1983, and a violation of State law, which, standing alone, would not support an action under § 1983. In such a case, the plaintiff need not obtain a final, favorable determination of his constitutional claims in order to claim an attorney's fee under § 1988. It is enough that the constitutional claims are "substantial," and arise from the same nucleus of facts on which the State law claims are based. *Maher* v. *Gagne, supra* at 128 n.10, 132 n.15. *Draper* v. *Town Clerk of Greenfield, supra* at 454. H.R. Rep. No. 1558, 94th Cong., 2d Sess. 4 n.7 (1976).

The rule is a compromise between accurate application of § 1983 and § 1988, and traditional policy of refraining from unnecessary resolution of constitutional questions. The ap-

plicable definition of a "substantial" constitutional claim
has been imported from cases involving Federal jurisdiction
to entertain claims based on State law.  E.g., *Hagans* v.
*Lavine*, 415 U.S. 528, 536-538 (1974).  H.R. Rep. No. 1558,
*supra*.  *Maher* v. *Gagne, supra*.  *Draper* v. *Town Clerk of
Greenfield, supra*.  A claim properly alleged survives the
test of substantiality unless "it is 'obviously without merit' or
. . . 'its unsoundness so clearly results from the previous
decisions of [the Supreme Court] as to foreclose the subject
and leave no room for the inference that the question sought
to be raised can be the subject of controversy.'"  *Hagans* v.
*Lavine, supra* at 537, quoting from *Ex parte Poresky*, 290
U.S. 30, 32 (1933).

There is no question that Stratos's constitutional claim
arose from the same facts as did his claims under State law
and Federal regulations; the issue is whether the constitu-
tional claim was substantial.  Stratos contended that the
distinction drawn by the department's regulation, between
those who owned broken washing machines and those who
owned no washing machine, was arbitrary, and therefore
denied him equal protection of the laws.  Traditional equal
protection analysis holds that when no "suspect classifica-
tion" or "fundamental right" is at issue — and none is
claimed here — courts will exercise a minimal review of
classifications drawn by law or government practice, to de-
termine whether the classification is rationally related to a
legitimate end.  E.g., *Massachusetts Teachers' Ass'n* v. *Sec-
retary of the Commonwealth*, 384 Mass. 209, 240-241
(1981); *Schweiker* v. *Wilson*, 450 U.S. 221, 234 (1981).
Several equal protection decisions have contained the im-
plicit suggestion that classification in distribution of govern-
ment benefits cannot fail minimum scrutiny, because they
are always related to legitimate objectives of fiscal con-
straint.  See *ABCD, Inc.* v. *Commissioner of Pub. Welfare*,
378 Mass. 327, 340-341 (1979); *Schweiker* v. *Wilson, supra*
at 238-239.  Nevertheless, the argument that distinctions
between persons equally in need must not be wholly arbi-
trary is still open, and is supported by substantial authority.

*Hagans* v. *Lavine, supra* at 539. See, e.g., *Dandridge* v. *Williams,* 397 U.S. 471, 483-487 (1970); *Hogan* v. *Harris,* 501 F. Supp. 1129, 1133-1138 (D. Mass. 1980), probable jurisdiction noted sub nom. *Schweiker* v. *Hogan,* 454 U.S. 891 (1981); *Burrell* v. *Norton,* 381 F. Supp. 339, 343-344 (D. Conn. 1974).

The judge below concluded that the distinction drawn in the department's regulation had "no purpose or justification." See *Draper* v. *Town Clerk of Greenfield, supra* at 454. The department has not suggested a justification apart from its desire to limit expenses. Therefore, applying the painstakingly minimal standard of substantiality defined in *Hagans* v. *Lavine, supra,* we conclude that Stratos's constitutional claim was sufficient to bring his action within § 1983, and to justify an award of fees under § 1988.

2. *Discretion to Award Fees.*

The department contends that, even if Stratos's action was properly characterized as an action under § 1983, the judge abused his discretion in awarding fees. Section 1988 does not require a fee award in every case to which it applies; the court may allow a fee "in its discretion." 42 U.S.C. § 1988 (Supp. IV 1980). See *Draper* v. *Town Clerk of Greenfield,* 384 Mass. 444, 455 (1981). Discretion to deny fees, however, is limited. Congress intended that successful plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S. Rep. No. 1011, 94th Cong., 2d Sess. 4 (1976), reprinted in [1976] U.S. Code Cong. & Ad. News 5908, 5912, quoting from *Newman* v. *Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968). *Porter* v. *Treasurer & Collector of Taxes,* 385 Mass. 335, 339, 341-342 (1982). See *Draper* v. *Town Clerk of Greenfield, supra.*

The department, noting that the range of cases recognized as § 1983 actions has increased since the enactment of § 1988, contends that a more liberal standard of discretion to deny fees should apply in § 1983 cases that do not involve violations of "civil rights." See Comment, Statutory Non-Civil Rights Violations of Section 1983 and Awards of Attorneys'

Fees after *Maine* v. *Thiboutot,* 61 B.U.L. Rev. 1069, 1085-1093 (1981). Applying this proposed broader standard, the department suggests that several factors weigh against an award of fees in the present case. Specifically, it points to the limited benefits achieved by the action, the department's good faith, and the burden on State taxpayers. See Comment, *supra* at 1089-1093. Cf. *Porter* v. *Treasurer & Collector of Taxes,* 385 Mass. 335, 342 (1982); *Draper* v. *Town Clerk of Greenfield, supra* at 455-456, and cases cited (suggesting that none of these factors would justify denial of fees in "special circumstances" test approved in legislative history).

The department's proposal rests on the premise — already disposed of in the preceding section of this opinion — that Stratos's equal protection claim was without merit and should be disregarded.[7] Moreover, the judge below exercised his discretion to grant an award of fees. At the appellate level, even the narrow "special circumstances" exception to the general rule favoring fee awards has been applied only to affirm trial judges' initial decisions to deny fees, rather than to overturn decisions to award fees. E.g., *Aho* v. *Clark,* 608 F.2d 365, 367-368 (9th Cir. 1979); *Buxton* v. *Patel,* 595 F.2d 1182, 1185 (9th Cir. 1979); *Huntley* v. *Community School Bd.,* 579 F.2d 738, 742 (2d Cir. 1978); *Chastang* v. *Flynn & Emrich Co.,* 541 F.2d 1040, 1044-1045 (4th Cir. 1976). But cf. *Zarcone* v. *Perry,* 581 F.2d 1039, 1041-1045 (2d Cir. 1978), cert. denied, 439 U.S. 1072 (1979) (affirming denial of fees on grounds other than those relied on by trial judge). In the circumstances, we find no abuse of discretion in the judge's decision to award fees.

3. *Calculation of Fees.*

Stratos contends that the judge calculated his fee award improperly. He does not object to the judge's reduction of

---

[7] The department does not offer a definition of "civil rights." Equal protection of the laws, however, is undoubtedly a right among the core group of rights envisioned by the drafters of § 1983 as deserving of special protection through § 1983 and § 1988. See *Maher* v. *Gagne,* 448 U.S. 122, 128 n.10 (1980).

compensable hours from twenty-nine hours, ten minutes to twenty-five hours, but he argues that the judge erred in relying on rule 53 to determine hourly rates.

As to this issue we look primarily to Federal sources of law. Although § 1988 refers to the "discretion" of the court, the legislative history incorporates, by reference to the case of *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), a set of guidelines for use in calculating fees. S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), reprinted in [1976] U.S. Code Cong. & Ad. News 5908, 5913. See *Draper* v. *Town Clerk of Greenfield*, 384 Mass. 444, 456-457 (1981). Implicit in Congress's endorsement of these guidelines is the intent that they be applied in a reasoned analysis of the circumstances of each case.

Analysis in the Federal courts is generally based on these *Johnson* guidelines endorsed by Congress in the legislative history of § 1988, which consist of twelve criteria for consideration. These are (1) time and labor expended by the attorney, (2) novelty and difficulty of the case, (3) the attorney's skill, (4) the preclusive effect of the case on counsel's ability to take on other work, (5) the attorney's customary fee, (6) the contingency of the outcome, (7) the unusual time pressures involved in the litigation, (8) the amount of money involved in the case and the results achieved, (9) the attorney's experience, ability, and reputation, (10) undesirability of being associated with the case, (11) the length of the professional relationship between the litigant and counsel, and (12) awards in similar cases. *Draper* v. *Town Clerk of Greenfield, supra* at 456-457, summarizing *Johnson* v. *Georgia Highway Express, Inc., supra* at 717-719. See, e.g., *Copeland* v. *Marshall*, 641 F.2d 880, 889 (D.C. Cir. 1980) (en banc); *Furtado* v. *Bishop*, 635 F.2d 915, 920 (1st Cir. 1980); *Draper* v. *Town Clerk of Greenfield, supra.* When arranged as a simple checklist, however, these criteria do not lead with any certainty to a number of dollars. Therefore, several courts have adopted a so called "lodestar" analysis, designed to provide a more objective framework for consideration of the *Johnson* criteria. Under this approach,

the court first determines a "lodestar" figure, derived by multiplying hours reasonably spent by a reasonable hourly rate. The lodestar is then adjusted upward or downward on the basis of those *Johnson* criteria that are not subsumed within the lodestar itself. See *Miles* v. *Sampson,* 675 F.2d 5, 9 (1st Cir. 1982); *Copeland* v. *Marshall, supra* at 890-894; *Furtado* v. *Bishop, supra* at 920, 924; *International Travel Arrangers, Inc.* v. *Western Airlines, Inc.,* 623 F.2d 1255, 1274 (8th Cir.), cert. denied, 449 U.S. 1063 (1980); *Northcross* v. *Board of Educ. of Memphis City Schools,* 611 F.2d 624, 642-643 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980); *Lindy Bros. Builders, Inc.* v. *American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 116-118 (3d Cir. 1976).

We agree with the concept underlying the "lodestar" method, that a fee award under § 1988 should reflect an objective "market" value for comparable legal services. See *Copeland* v. *Marshall, supra* at 906-907. See also S. Rep. No. 1011, *supra* (fees should be "adequate to attract competent counsel," but not result in windfall). The two-level "lodestar" analysis, however, seems unnecessarily complex. Further, courts applying it have had difficulty in determining which of the *Johnson* criteria are subsumed in reasonable hours and rates (lodestar), and which should be considered in the second stage of analysis, as adjustments to the lodestar. Compare *Copeland* v. *Marshall, supra* at 891-894, and *Furtado* v. *Bishop, supra* at 920, with *Northcross* v. *Board of Educ. of Memphis City Schools, supra* at 643.

We believe it is enough to state, without adopting a two-step approach of lodestar and adjustments, that in applying the *Johnson* guidelines, fair market rates for time reasonably spent should be the basic measure of reasonable fees, and should govern unless there are special reasons to depart from them.[8] In determining reasonable time expenditure,

---

[8] Although we assume that calculation of a reasonable fee award under § 1988 is governed by Federal law, see *Ferdinand* v. *Fairbanks,* 599 P.2d 122, 125 (Alas. 1979), we are not bound to follow the precise method adopted by the United States Court of Appeals for the First Circuit. E.g., *Commonwealth* v. *Hill,* 377 Mass. 59, 61 (1979).

the judge should begin with the time documented by the attorney (*Johnson* no. 1), and consider whether it was reasonable in light of the difficulty of the case (*Johnson* no. 2) and the results obtained (*Johnson* no. 8). This last factor, "the amount of money involved . . . and results achieved," *Draper* v. *Town Clerk of Greenfield, supra* at 457, may be the most difficult of the *Johnson* criteria to apply fairly. The financial benefit to the plaintiff, and the general benefit to public interests, are relevant considerations, and compensable hours may be reduced if the time spent was wholly disproportionate to the interests at stake. See *Draper* v. *Town Clerk of Greenfield, supra* at 456-457. The very reason for § 1988, however, is to encourage suits that are not likely to pay for themselves, but are nevertheless desirable because they vindicate important rights.[9] See *Furtado* v. *Bishop, supra* at 917-919. Therefore, market value must be understood to refer to the market for comparable services, rather than the market for work on similar cases. The fact that the fee is high in relation to damages, or that the suit did not confer broad benefits on the public, should not result automatically in major restrictions on compensable hours.

Calculation of reasonable hourly rates should begin with the average rates in the attorney's community for similar work by attorneys of the same years' experience (*Johnson* no. 3). See, e.g., *Copeland* v. *Marshall, supra* at 892 (community standard).[10] Rates may differ according to the type of service performed — courtroom work, research, travel, or other tasks. See *Northcross* v. *Board of Educ. of Memphis City Schools, supra* at 638. Prevailing community rates may then be modified if, on analysis of the remaining *Johnson* criteria (nos. 3, 4, 6, 7, 9, 10, 11 12), good reason

---

[9] We express no view on whether the fee setting criteria we describe would apply in the same fashion if the underlying § 1983 action were based on Federal statutory violations not affecting civil or equal rights.

[10] In the interests of economy of time and expense, the litigants may agree to offer (as Stratos did in this case) affidavits as to this issue, perhaps including, with the approval of the judge, affidavits of the counsel of record.

appears for doing so. See *Lindy Bros. Builders, Inc.* v. *American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir. 1976) (detailed evaluation of attorney's performance unnecessary).

Stratos argues that it is clear that the judge did not exercise his discretion in accordance with the controlling principles. We agree that it would be error for the judge to rely solely on hourly rates fixed by rule 53 for compensation of appointed criminal counsel. Compensation for criminal defense counsel serves purposes quite different from those of § 1988, and the rates set by rule 53 do not necessarily reflect, generally, the concerns Congress intended to inject into the calculation of fees under § 1988. See *Gurule* v. *Wilson*, 635 F.2d 782, 793 (10th Cir. 1980). In awarding fees, therefore, the judge must exercise the discretion granted him, rather than simply refer to fixed rates such as those in rule 53. Accord, *id.*; *King* v. *Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977), cert. denied, 438 U.S. 916 (1978).

Although it is not entirely clear in the record before us, we conclude that the judge may have limited his consideration solely to the hourly rates set out in the rule. Stratos suggests that we should award fees based on an hourly rate of $50.[11] The department, on the other hand, suggests that we should accept the total award fixed by the judge, because he could have reached the same figure through a proper application of the *Johnson* guidelines. We prefer to remand the case to the judge so that he may determine and award a reasonable fee in accordance with this opinion.[12]

---

[11] As noted earlier, Stratos does not contest the judge's finding that his counsel reasonably spent twenty-five hours on the case. The department also appears to accept the twenty-five hour figure. It argues that the judge might have reduced further the number of hours compensated, but does not contend that he erred in setting the figure at twenty-five. In any event, the reduction from twenty-nine hours, ten minutes, to twenty-five hours was not an abuse of discretion, in light of the simplicity of the merits of the case, and the modest gains at stake.

[12] Stratos argues that we should accept the judge's "finding" that $50 was a reasonable hourly rate. The judge, however, did not select the $50 figure as his estimation of the proper rate, but merely stated that it was

Finally, Stratos asks that we award fees for this appeal. As a general rule, time spent in establishing and defending a fee, or objecting to an unduly small award, should be included in the final calculation of the award. Exclusion of such services would dilute the value of the award, and so frustrate the purpose of the act authorizing fees. See, e.g., *Bond* v. *Stanton*, 630 F.2d 1231, 1235-1236 (7th Cir. 1980), cert. denied sub nom. *Blinzinger* v. *Bond*, 454 U.S. 1063 (1981); *Johnson* v. *Mississippi*, 606 F.2d 635, 637-639 (5th Cir. 1979); *Weisenberger* v. *Huecker*, 593 F.2d 49, 54 (6th Cir.), cert. denied, 444 U.S. 880 (1979). We do not believe, however, that Congress intended to encourage litigation over fees beyond what is necessary to bring the award within the range of reasonableness. When the plaintiff has obtained an award that, despite errors in calculation, is not plainly unreasonable, the purposes of § 1988 do not require compensation for work expended on an appeal initiated by the plaintiff. Here, both parties appealed the fee award. In determining a final award, the judge should consider time spent on the appeal. He may, however, exclude time allocable to Stratos's own appeal if it appears, after reconsideration of the proper fee for trial work, that his initial award was not plainly unreasonable.

We conclude that the judge was correct in treating Stratos's challenge to the department's regulation as an action under § 1983, and in awarding an attorney's fee under § 1988. We vacate the award, however, and remand for further consideration of the amount of fees, in accordance with this opinion. Further evidence on that issue may be received in the discretion of the judge.

*So ordered.*

---

"not . . . unreasonable." Stratos also supports the $50 figure by reference to an economic survey of Massachusetts lawyers appended to his brief. This survey is not part of the record on appeal, and so is not properly before us. See, e.g., *Custody of a Minor*, 375 Mass. 733, 736 n.1 (1978).